UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUAN NAPOLES GARCES,

      Plaintiff,

v.

U.S. DEPARTMENT OF
HOMELAND SECURITY,

      Defendant,

                                  /

Case No. 2:26-cv-784-KCD-NPM

## **ORDER**

Petitioner Juan Napoles Garces has filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.) As best the Court can tell, he raises two claims. First, he seeks relief under a judgment issued by a district court in the Central District of California. (*Id.* at 7 (citing *Maldonado Bautista v. Santacruz*, No. 5:25- CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025)).) Second, he argues his continued detention without a bond hearing violates the Fifth Amendment. (*Id.*) Neither claim has merit.

Garces is a Cuban citizen who was paroled into the United States several decades ago. (Doc. 7 at 1.) He later lost that legal status and an immigration judge ordered him removed in 1987. When the removal did not come to fruition, Garces was placed on supervision and released. That status

recently ended too after a criminal charge, and Garces has been in immigration custody since December 24, 2025. (*Id.* at 2.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

As mentioned, Garces first argues that he is entitled to relief under *Maldonado Bautista*. In that case, the California court certified a nationwide class of noncitizens who entered the country without inspection and declared they were entitled to bond hearings under 8 U.S.C. § 1226(a). The problem for Garces is simple—he is not a member of the putative class recognized in *Maldonado Bautista*. Garces has a final removal order, so his detention is governed by a different statutory framework. And even setting that issue aside, *Maldonado Bautista* has no binding effect here. *See, e.g.*, *Jandres-*

2

*Ordonez v. Bondi*, No. 6:25-CV-084-H, 2026 WL 274493, at \*4 (N.D. Tex. Jan. 23, 2026); *Ayala v. Harper*, No. 1:26-CV-204-CLM-GMB, 2026 WL 501113, at \*7 (N.D. Ala. Feb. 23, 2026); *Morales v. Noem*, No. 25-62598-CIV, 2026 WL 236307, at \*8 (S.D. Fla. Jan. 29, 2026).

Garces' constitutional claim fares no better. The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

As the Supreme Court explained in *Zadvydas v. Davis*, 533 U.S. 678 (2001), the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 659. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut

3

that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Applied here, Garces cannot satisfy the initial temporal requirement. ICE took him into custody on December 24, 2025. (Doc. 1 at 5.) Because he has been detained for just over three months, he remains within the window in which his custody is presumptively reasonable. Until the six-month *Zadvydas* period concludes, any due process claim is premature. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025).

Garces' due process claim under *Zadvydas* is not yet ripe, so the habeas petition is **DENIED** without prejudice to him refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on April 8, 2026.

Kyle C. Dudek
United States District Judge